UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JENNIFER R. ZUMWALT,<br><br>            Plaintiff,<br><br>  v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social<br>Security,<br><br>            Defendant. | NO.  CV-04-3121-LRS<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |

**INTRODUCTION**

Jennifer R. Zumwalt, Plaintiff, filed concurrent Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") applications on October 24, 2001, alleging an onset date of December 22, 1998 (Tr. 14-15). She alleged disability due to depression, anxiety, headaches, and cervical, thoracic, and lumbar strain (Tr. 22, 55-57). The applications were denied initially and upon reconsideration (Tr. 25-26). After timely requesting a hearing, Plaintiff appeared before Administrative Law Judge ("ALJ") Thomas Robinson on January 5, 2004 in Yakima, Washington (Tr. 234). At the hearing, the ALJ heard testimony from Plaintiff, represented by an attorney, and from a vocational expert, Scott Whitmer (Tr. 13). On February 11, 2004, the ALJ issued a decision finding that Plaintiff was not disabled (Tr. 18). Plaintiff requested a review of the

ORDER - 1

hearing decision by the Appeals Council and her request for review was denied on September 24, 2004 (Tr. 4-6). Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). On October 27, 2004, Plaintiff filed her Complaint for judicial review with this Court.

## SEQUENTIAL EVALUATION PROCESS

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if her impairments are of such severity that the claimant is not only unable to do her previous work but cannot, considering claimant's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if she is engaged in substantial gainful activities. If she is, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If she is not, the decision maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c).

If the claimant does not have a severe impairment or

combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work she has performed in the past. If the claimant is able to perform her previous work, she is not disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant cannot perform this work, the fifth and final step in the process determines whether she is able to perform other work in the national economy in view of her age, education and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f). *See Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

ORDER - 3

**STANDARD OF REVIEW**

"The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)).  Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger,* 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld.  *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner.  *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400.  If evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).

ORDER - 4

**ISSUES**

Plaintiff contends that the Commissioner erred as a matter of law. Specifically she argues that:

1. The ALJ erred by improperly rejecting the opinion of her treating physicians.

2. The ALJ erred by providing an incomplete hypothetical to the Vocational Expert [VE] at the hearing.

This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.

**STATEMENT OF FACTS**

The facts have been presented in the administrative transcript, the ALJ's decision, and the briefs of both Plaintiff and Defendant. This court will recite those facts summarily here.

**1. Plaintiff's Background and Hearing Testimony**

At the time of the hearing, Plaintiff was 30 years old, and classified as a "younger person" under the Social Security Act. See 20 C.F.R. §§404.1563(c), 416.963(c). She has a general equivalency degree [G.E.D.] (Tr. 15) and was involved in a motor vehicle accident on December 16, 1998 (Tr. 139). She has been diagnosed with a variety of physical and mental impairments including depressive disorder, anxiety disorder, chronic cervical/thoracic/lumbar strains, chronic post-traumatic headaches, and right arm brachial plexus compression (Tr. 22). Her past relevant work experience includes a sander, food preparer, and fast food manager trainee (Tr. 15). Plaintiff testified that she recently underwent a divorce from her husband of 11 ½ years. (Tr.

ORDER - 5

241). She stated at the hearing that she has three dependent children living with her (Tr. 242). Plaintiff also testified that working even part time, i.e. babysitting, McDonalds, was too stressful for her (Tr. 249, 251).

**2. Vocational Testimony**

Mr. Scott Whitmer was given three different hypotheticals at the hearing with regard to the residual functional capacity determination. (Tr. 21). First, the ALJ asked Mr. Whitmer to consider a claimant who can occasionally lift and/or carry 10 pounds, frequently lift and/or carry 5 pounds, and needs to alternate between sitting and standing every 30 minutes. Second, the ALJ asked Mr. Whitmer to consider a claimant who can perform a full range of sedentary work (occasionally lift and/or carry 10 pounds, frequently lift and/or carry 10 pounds, stand and/or walk at least 2 hours in an 8-hour workday, and sit about 6 hours in an 8-hour workday) with limited social interaction. Tr. 21. Third, the ALJ asked Mr. Whitmer to consider a claimant who can perform a full range of sedentary work with limited social interaction as well as moderate mental limitations as assessed by DDS (Tr. 21, 185-86).

Mr. Whitmer testified that when using the first hypothetical, there were no jobs the claimant could perform (Tr. 21). He testified that when using the second hypothetical, the claimant could perform work as a sack repairer (DOT# 782.687-046; sedentary; unskilled) for which there are 186,000 jobs in the United States and less than 100 jobs in the State of Washington. Id. Mr. Whitmer testified that the claimant in the second hypothetical could also be an assembler (DOT# 734.687-018; sedentary; unskilled) for which there are 118,000 jobs in the United States. Id. Finally, Mr. Whitmer testified that when

ORDER - 6

using the third hypothetical, the claimant could obtain but not maintain employment due to the additional moderate mental limitations. Id.

### 3. Medical Records

The undersigned judicial officer adopts the ALJ's summary of the medical evidence and discusses the relevant medical reports and opinions in the Analysis section below.

Plaintiff alleges disability due to a variety of physical and psychological ailments. The ALJ's discussion and findings cover the medically determinable impairments of an anxiety disorder, a rule-out post traumatic stress disorder, headaches, right arm brachial plexus compression, and cervical/thoracic/lumbar strains as well as Plaintiff's other physical and mental complaints.  (Tr. 15).

## ANALYSIS

### A.  The ALJ Properly Evaluated Medical and Mental Evidence From Treating Physicians

Plaintiff argues that the ALJ summarily rejected the opinions of treating physicians, Drs. Richard Drew, C. Donald Williams, and James Bailey, without convincing reasons.  Ct. Rec. 15, at 16.  At the outset, the undersigned notes that neither Dr. Drew, Ph.D. nor Dr. Williams, M.D. were treating physicians, but rather one-time examining doctors for consultative exam purposes only (Tr. 16-17, 115-17, 166-70).

The Court disagrees with Plaintiff and finds that the ALJ did consider and evaluate the medical and mental evidence opinions from treating physicians. The ALJ properly considered Dr. Drew's neuropsychological evaluation in April 1999 and his opinion that Plaintiff's alleged memory difficulties could be the result of anxiety, frustration, and depression that she was reporting.  Dr.

ORDER - 7

Drew did not think it was necessary for her to undergo a more complete neuropsychological evaluation or treatment (Tr. 116-17).

The ALJ also considered Dr. Williams' opinions from his consultative examination in November 2002 in which he opined that Plaintiff had a depressive disorder and an anxiety disorder with moderate difficulties in social or occupational functioning (Tr. 17, 168-69). In weighing medical evidence, the ALJ noted that Plaintiff's treating physician, Stephen Litchfield, D.O., released her to work in September 1999 with the only limits being to avoid kneeling, repetitive bending, and heavy lifting (Tr. 18).

After December 1999, the ALJ noted that Plaintiff had limited medical treatment, seeing Dr. Litchfield on only one occasion in January 2000 (tr. 19, 141) and had only intermittent treatment for miscellaneous physical complaints, and failed to mention her allegedly disabling back and neck problems (Tr. 162-65). Despite allegedly disabling limitations, her physicians found at most mild objective findings and observed no functional limitations (Tr. 115-46, 162-70). Only conservative treatment was recommended.

The ALJ noted that Plaintiff's mental impairments, including symptoms of depression and anxiety, have coincided with difficulties in her personal relationship with her husband (purportedly ex-husband at the present time). The ALJ noted that her abusive marriage was the only stress she could identify to her physicians that precipitated her emotional symptoms (Tr. 19, 147-61). The ALJ also noted that Plaintiff was able to perform work activity and was released to work in 1999 (Tr. 20).

In January 2000, Dr. Litchfield opined that her neck and back impairments left her only 5% disabled and assigned her a minor

impairment rating (Tr. 20). Defendant asserts that other evidence of record showed Plaintiff was capable of performing light to medium work during the relevant period (Tr. 21). Further, Defendant points out, the ALJ noted that no physician had opined that she was disabled (Tr. 21). For these reasons, the ALJ properly considered the medical evidence and opinions of these physicians.

With respect to Dr. James E. Bailey, Ph.D., a non-treating State Agency physician, Defendant states that the ALJ adopted some of the findings. Specifically, Defendant states the ALJ did not adopt the State Agency physician's findings that the Plaintiff had moderate limitations in the ability to understand and remember detailed instructions or respond to changes in work settings (Tr. 17, 171-96). The ALJ did adopt the finding, though, that Plaintiff can tolerate only limited public interaction (Tr. 23), which appears to the Court to be supported by the evidence of record. Finally, the ALJ noted that Dr. Bailey opined in December 2002 that there was insufficient medical evidence to establish the existence of a physical diagnosis (Tr. 26).

The ALJ clearly and fully evaluated and explained the medical and mental evidence set forth in the record. As such, the ALJ properly discharged his responsibilities.

**B.   The ALJ's RFC and Step Five Findings Were Proper**

The ALJ determined that from the alleged onset date through 1999, Plaintiff retained the residual functional capacity to perform light exertion work, lifting and carrying up to 20 pounds occasionally, 10 pounds frequently, stand and/or walk for 6 hours in an 8 hour workday and sit for up to 6 hours of an 8 hour workday. As of 2000, the ALJ determined that Plaintiff retained the residual

functional capacity to perform medium work, lifting and carrying up to 50 pounds occasionally, 25 pounds frequently, stand and/or walk for 6 hours in an 8 hour workday and sit for up to 6 hours of an 8 hour workday. Further, the ALJ determined, Plaintiff could only tolerate limited public interaction. (Tr. 23, Finding 6).

The ALJ, adopting the VE's testimony for the second hypothetical, as discussed above, found that Plaintiff could perform other work as a sack repairer or an assembler (Tr. 22). Additionally, the ALJ found that it was highly likely that Plaintiff could perform many other sedentary to medium jobs with limited social interaction given that she actually has fewer limitations than were presented to the VE at the hearing. Id.

Plaintiff argues that the ALJ's conclusion that she could perform work available in significant numbers in the national economy was based on the testimony of the vocational expert(VE), who was not provided with a complete hypothetical. Ct. Rec. 15, at 17.

Defendant responds that the ALJ's residual functional capacity [RFC] finding and vocational hypothetical question properly accounted for all of Plaintiff's physical and mental limitations that the ALJ found <u>credible</u>. Ct. Rec. 20, at 10. Defendant argues that because the ALJ's RFC finding and vocational hypothetical question reflected a proper clarification of the limitations identified, his decision is free of legal error. Id.

### 1. Credibility

The Court next considers whether the ALJ determined Plaintiff's credibility properly. Plaintiff essentially argues that the ALJ's credibility findings were unsupported by substantial evidence in the record.

ORDER - 10

An ALJ may undertake a credibility analysis when the medical evidence regarding a claimant's disability is inconsistent. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir.1984).

The Ninth Circuit has recognized that the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.1995). The ALJ's findings, however, must be supported by specific, cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir.1990).

Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir.1995) (internal quotation marks omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.1993).

The ALJ gave clear and convincing reasons for not finding Plaintiff's testimony fully credible. The ALJ considered factors such as Plaintiff's appearance and movements at the hearing; observation by third parties and physicians regarding disability; reported effectiveness of her medications; discrepancies between her allegations of debilitating pain and disabling symptoms and the medical evidence of record; daily activities; duration, frequency, and intensity of the condition; and functional restrictions (Tr. 18-20). The ALJ found numerous inconsistencies in the record, particularly between Plaintiff's description of her inability to work and the physical findings, including the lack of clinical or

laboratory findings. When the Plaintiff's subjective complaints are contradicted and found not to be fully credible, a doctor's repetition of the same suffers the same results. *Barker v. Secretary of Health and Human Services*, 882 F.2d 1474, 1477 (9th Cir. 1989).

Plaintiff's daily activities (cooking; laundry; caring for her children as well as other children; handling finances; housekeeping; and attending part-time community college on a Pell grant) demonstrate far greater residual functioning than she admits to having, and reflect a normal level of daily activities, which the ALJ noted in his decision (Tr. 20). Thus, the Court cannot say that the ALJ erred in giving credence only to those subjective complaints that were consistent with the objective medical evidence and Plaintiff's daily activities.

**2. The ALJ Has Considered and Discussed Important Evidence**

Plaintiff replies that the ALJ has improperly rejected the opinions of several physicians, which opinions should result in a finding of disability based on VE testimony. Ct. Rec. 21, at 2. Specifically, Plaintiff argues that when the VE was presented with Dr. Bailey's assessment of mental limitations (Tr. 185-86), the VE testified that although the claimant would be able to obtain employment, she would not be able to sustain competitive employment (Tr. 279). Finally, Plaintiff argues that the Defendant (via its brief writer) has failed to provide any explanation as to why some of the State Agency physicians' findings or limitations were not adopted. Ct. Rec. 21, at 4.

An ALJ may accept some, but not all, that an expert says. See *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir.1989). Likewise, an

ORDER - 12

ALJ may reject an opinion inferentially, even a treating physician's opinion, if those inferences are there to be drawn. *Magallanes,* 881 F.2d 747 at 755. The ALJ here summarized the facts and conflicting medical evidence in a detailed and thorough fashion, stating his interpretation and making findings.

An ALJ need not provide a written evaluation of every piece of evidence that is presented. *Pugh v. Bowen*, 870 F.2d 1271, 1278 (7th Cir. 1989). "Instead, the ALJ must consider and discuss the important evidence." *Anderson v. Bowen*, 868 F.2d 921, 924 (7th Cir. 1989). Having reviewed the record and Plaintiff's submissions, the undersigned judicial officer concludes that Plaintiff has not demonstrated that her claims should result in a finding of disability. The undersigned judicial officer rejects Plaintiff's claim that the ALJ's decision was legally inadequate at steps three and five of the disability analysis.

## CONCLUSION

The Court concludes that, because the ALJ's decision was based on and supported by medical and mental evidence and was reached by applying proper legal standards, the ALJ's findings and ultimate determination on disability are conclusive. For the reasons outlined above, the undersigned concludes that the Commissioner's decision to deny Plaintiff DIB and SSI benefits was supported by substantial evidence in the record and was based upon the proper legal standards.

Accordingly,

**IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 14)** is **DENIED**.

2. Defendant's Motion for Summary Judgment **(Ct. Rec. 19)** is **GRANTED**.

3. The decision of the Commissioner is **AFFIRMED**.

**IT IS SO ORDERED**. The District Court Executive is directed to enter this Order and an Order of Judgment, forward copies to counsel, and close file.

**DATED** this 23rd day of August, 2005.

*s/Lonny R. Suko*
_____
LONNY R. SUKO
United States District Judge

ORDER - 14